692 So.2d 309 (1997)
STATE of Florida, Appellant,
v.
Robin Lynn SKOLAR, Appellee.
No. 96-2143.
District Court of Appeal of Florida, Fifth District.
May 2, 1997.
Robert A. Butterworth, Attorney General, Tallahassee, and Anthony J. Golden, Assistant Attorney General, Daytona Beach, for Appellant.
Jack R. Maro, Ocala, for Appellee.
W. SHARP, Judge.
The state seeks review of a pretrial order[1] which determined the admissibility of hearsay evidence at Skolar's trial: a transcribed, taped 911 call from an anonymous caller; and a taped interview and deposition with Skolar's mother (then deceased). The state argues the 911 call is inadmissible hearsay, and that the deposition testimony should be excluded because it was not perpetuated in accordance with Rule 3.190(j).[2] We agree and reverse.
On August 28, 1995, Skolar shot to death her estranged boyfriend, Timothy Robbins. Several hours prior to the murder, an anonymous female made a 911 call to the Citrus County Sheriff's Office. She told them she had seen Skolar, whom she did not know, a few hours earlier in a convenience store. *310 Skolar told the caller that her boyfriend beat her and that she had left him. Skolar also gave the caller her telephone number and address. When the anonymous caller telephoned Skolar later, Skolar claimed Robbins was at her house, would not leave, and was "just trying to kill her and stuff." The caller gave the dispatcher Skolar's address and telephone number.
When the dispatcher called Skolar, she elicited information that Robbins was there, and that Skolar lived in Marion County. The dispatcher transferred the matter to the Marion County Sheriff's Office, and a deputy was sent to investigate. Robbins left without speaking to the deputy. The deputy advised Skolar to keep her doors locked, not to let Robbins back inside, and that a patrol car would periodically check on the house.
Some time later that night, Robbins again showed up at Skolar's house and she let him inside. Once inside, he refused to leave. At approximately 12:45 a.m., he telephoned Skolar's mother, Ina Hunt, who lived in Georgia. The next morning, Hunt gave details of this telephone call to Detective Sowder from the Marion County Sheriff's Office in a taped telephone statement.
Hunt told Sowder that she could hear Skolar repeatedly screaming at Robbins to get out after Robbins called her. Robbins told Hunt "well she's pointing a gun at me." He laid down the telephone and Hunt could hear Skolar and Robbins hollering and swearing back and forth at each other. She could hear them tussling back and forth, and she claimed she could hear Robbins taunting Skolar, going from one side of the room to the other, as if he were egging her on or something. Hunt then heard the gun go off. Robbins grabbed the telephone and stated "Oh my God, I ... I think I've been shot."
As part of the state attorney's investigation, Hunt was deposed on August 30, 1995 under Rule 3.220, which authorizes discovery depositions. Prior to the deposition, Hunt listened to a tape of the interview she had given Sowder. In the deposition, Hunt stated that the tape summed up the telephone call from Robbins.
After Hunt's death, Skolar brought a motion to determine the admissibility of the 911 call and Hunt's deposition. We deal with these issues separately.
911 Call. The first issue is whether the 911 call from the anonymous caller is admissible at Skolar's trial. Generally, 911 calls are admissible under the excited utterance or spontaneous statement exceptions to the hearsay rule.[3] § 90.803; Allison v. State, 661 So.2d 889, 894 (Fla. 2d DCA 1995); Ware v. State, 596 So.2d 1200 (Fla. 3d DCA 1992).
These two hearsay exceptions are primarily distinguishable by the time lapse existent between the event and the statement describing the event, although they often overlap. Pope v. State, 679 So.2d 710 (Fla. 1996), cert. denied, ___ U.S. ___, 117 S.Ct. 975, 136 L.Ed.2d 858 (Fla.1997); State v. Jano, 524 So.2d 660 (Fla.1988). The spontaneous statement must be made contemporaneously with the event, while the declarant is actually perceiving the event. § 90.803(1).[4] In contrast, an excited utterance is a statement made while the declarant is under the stress of the excitement caused by the event. Depending upon the circumstances, it is possible for the stress to last a considerable period of time. Jano. But a hearsay statement made long after the occurrence of the startling event is not admissible, even though the declarant once again becomes excited in the course of telling the event.
*311 In this case, the 911 call from the anonymous caller cannot qualify under either exception. The call was made several hours prior to Robbins's murder, and it did not involve the murder at all. Rather, it involved self-serving statements by Skolar of Robbins's alleged physical abuse. It was not made as the result of a startling or stressful event, and it therefore cannot qualify under § 90.803 as either a spontaneous statement or an excited utterance.
The fact that a call is placed on a 911 line does not, standing alone, qualify it for admission under § 90.803. The statement must still meet the requisites of the statute. See generally Bemis v. Edwards, 45 F.3d 1369 (9th Cir.1995)(911 call not admissible absent first hand knowledge of the events described under present sense impression or excited utterance exceptions); United States. v. Sallins, 993 F.2d 344 (3d Cir.1993)(contents of a 911 call were inadmissible hearsay); People v. Vasquez, 88 N.Y.2d 561, 647 N.Y.S.2d 697, 670 N.E.2d 1328 (N.Y.1996) (statements made in a 911 call, not contemporaneous with incident not admissible); People v. Adkinson, 215 A.D.2d 673, 628 N.Y.S.2d 711 (2d Dept.1995)(transcript of a 911 call was not admissible as present sense exception because the caller not an eyewitness), affirmed sub nom, People v. Vasquez, 88 N.Y.2d 561, 647 N.Y.S.2d 697, 670 N.E.2d 1328 (1996); People v. Orth, 201 A.D.2d 510, 607 N.Y.S.2d 415 (2d Dept.1994) (insufficient collaboration of contents of 911, call not admissible); People v. Brown, 80 N.Y.2d 729, 594 N.Y.S.2d 696, 610 N.E.2d 369 (1993); People v. Smith, 162 A.D.2d 736, 557 N.Y.S.2d 424 (2d Dept.1990) (anonymous 911 call not business record exception and not admissible).[5] The ruling to admit this call was erroneous.
Hunt's Deposition Testimony. Two types of depositions are available in Florida criminal law; discovery depositions, and depositions to perpetuate testimony. They are authorized by two different rules of procedure.[6]See Fla.R.Crim.P. 3.220 and 3.190(j). Rule 3.190(j) is to be utilized in order to perpetuate or preserve testimony of a witness for use at a later trial. The rule details a fairly exacting procedure which requires a verified application, or one supported by affidavits of credible persons, notice, and a court order must issue. Florida courts have consistently held that this rule must be complied with in order to preserve the testimony of a witness for use at a later trial.
Merely deposing a witness, even if with the idea of perpetuating testimony for use at a later trial, does not ipso facto qualify it for admission. See McMillon v. State, 552 So.2d 1183 (Fla. 4th DCA 1989). When the requisites of Rule 3.190(j) are not complied with, the testimony must be excluded as substantive evidence. State v. James, 402 So.2d 1169, 1171 (Fla.1981)(where witness died, discovery deposition cannot be used as evidence in criminal trial); Clark v. State, 572 So.2d 929 (Fla. 5th DCA 1990), quashed on different grounds, 614 So.2d 453 (1993); Campos v. State, 489 So.2d 1238 (Fla. 3d DCA 1986); Barnett v. State, 444 So.2d 967 (Fla. 1st DCA 1983); Terrell v. State, 407 So.2d 1039 (Fla. 1st DCA 1981). Although the court may disagree with the rule and find it overly technical, it has no choice but to follow the rule as written. Smith v. State, 606 So.2d 641 (Fla. 1st DCA 1992).
In this case, although Hunt's medical condition was known to both sides, neither availed itself of the opportunity to perpetuate Hunt's testimony under rule 3.190(j). Accordingly, her deposition must be excluded, in accordance with the Florida supreme court's decision in James, which is factually indistinguishable from this case.[7]
Petition for Writ of Certiorari GRANTED; Order QUASHED and REMANDED.
HARRIS and GRIFFIN, JJ., concur.
NOTES
[1] This is a nonappealable, nonfinal order which we elect to treat as a petition for certiorari because it violates the essential requirements of law. Carter v. State, 608 So.2d 562 (Fla. 1st DCA 1992); State v. Mendez, 423 So.2d 621 (Fla. 4th DCA 1982); State v. Wilcox, 351 So.2d 89 (Fla. 2d DCA 1977). See also State v. Barnes, 280 So.2d 46 (Fla. 2d DCA 1973) (decided prior to Rule 3.190(j)). A district court of appeal can exercise certiorari review over a nonfinal pretrial order where the state would otherwise be deprived of the opportunity for review. State v. Bradford, 658 So.2d 572 (Fla. 5th DCA 1995).
[2] Skolar's mother died of cancer prior to the hearing.
[3] See section 90.803, which provides:

(1) Spontaneous Statement. A spontaneous statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter, except when such statement is made under circumstances that indicate its lack of trustworthiness.
(2) Excited Utterance. A statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. (emphasis supplied)
[4] Section 90.803(1) provides for an exception to the contemporaneous requirement, and statements may be made "immediately thereafter, except when such statement is made under circumstances that indicate its lack of trustworthiness." The length of time between the 911 call and the call to Skolar is unclear, and the anonymity of the caller renders it not susceptible to any determination that it was trustworthy.
[5] This rationale also applies to the taped telephone interview of Hunt, which occurred the day after the murder.
[6] State v. Green, 667 So.2d 756, 759 (Fla. 1995).
[7] We note that Hunt's taped interview with Detective Sowder is not admissible independently from the transcript on any theories argued in this appeal.